2024R00908/KPO&KML

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. Zahid N. Quraishi |
| v. | : | Crim. No. 25-1 |
| DARREN MCCLAVE | : | 18 U.S.C. § 371 |
| | : | 18 U.S.C. § 1519 |

RECEIVED
JAN 0 2 2025
AT 8:30____M
CLERK, U.S. DISTRICT COURT - DNJ

## INFORMATION

The defendant having waived in open court prosecution by Indictment, the United States Attorney for the District of New Jersey and the Assistant Attorney General for the Environment and Natural Resources Division of the U.S. Department of Justice charge:

## BACKGROUND

1. At all times relevant to this Information unless otherwise indicated:

    a. Defendant DARREN MCCLAVE ("MCCLAVE") resided in or around Bradley Beach, New Jersey. MCCLAVE was Captain and operator of a commercial fishing vessel ("Fishing Vessel-1"). From as early as in or about March 2017 to on or about March 31, 2021, Fishing Vessel-1 held an Incidental Scallop Permit issued by the National Marine Fisheries Service of the National Oceanic and Atmospheric Administration ("NOAA"), an agency within the U.S. Department of Commerce. The permit limited the amount of Atlantic sea scallops ("scallops") that the vessel could harvest in federal waters to 40 pounds per trip.

    b. Co-conspirator-1 resided in or around Barnegat, New Jersey. Co-conspirator-1 was a co-owner of a seafood company, hereinafter referred to as

"Seafood Company-1," which sold freshly caught seafood to wholesalers and restaurants in New Jersey. Seafood Company-1 held a Greater Atlantic Federal Dealer Permit, also issued by NOAA. The dealer permit authorized Seafood Company-1 to purchase scallops from commercial fishing vessels that held federal permits to harvest scallops.

   c. From on or about April 1, 2021, to on or about April 5, 2021, Fishing Vessel-1 held a General Category Individual Fishing Quota ("IFQ") Scallop Permit, which limited the amount of scallops the vessel could harvest in federal waters to 600 pounds per trip.

   d. NOAA regulations required that federally permitted commercial fishing vessels, like Fishing Vessel-1, submit a fish log report, on a form supplied by NOAA called a Fishing Vessel Trip Report ("FVTR"). NOAA regulations required that FVTRs be completed by the operator, that is the Captain, of a vessel prior to coming to dock and submitted to NOAA by the 15th of the month following the month in which the trip landed. The FVTR also had to be signed, under penalties for false statements, and dated.

   e. NOAA regulations also required that federally permitted dealers, like Seafood Company-1, submit to NOAA weekly electronic reports, commonly referred to as "Dealer Reports." NOAA regulations required that such reports identify each of the species sold to the dealer that week, the date sold, the price and weight of the species sold, the port of landing, and the catch vessel. Dealer Reports also had to be signed, under penalties for false statements, and dated.

2. From at least as early as in or around October 2017 through on or about April 5, 2021, in Monmouth and Ocean Counties, in the District of New Jersey, and elsewhere, the defendant,

DARREN MCCLAVE,

did knowingly and intentionally conspire and agree with Co-conspirator-1 and others to knowingly falsify records, namely Dealer Reports and Fishing Vessel Trip Reports, with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of NOAA, an agency of the United States, contrary to Title 18, United States Code, Section 1519.

### Goal of the Conspiracy

3. The goal of the conspiracy was for MCCLAVE, Co-conspirator-1, and others, to falsify Fishing Vessel Trip Reports and Dealer Reports for submission to NOAA to cover up the total quantity of scallops harvested on an individual trip by Fishing Vessel-1 and subsequently sold to Seafood Company-1.

### Manner and Means of the Conspiracy

4. It was a part of the conspiracy that:

a. MCCLAVE, while operating Fishing Vessel-1, illegally harvested more than 40 pounds of scallops on certain trips during the time period Fishing Vessel-1 possessed an Incidental Scallop Permit.

b. MCCLAVE concealed illegally harvested scallops in a hidden compartment on Fishing Vessel-1 during at least part of the time period Fishing Vessel-1 possessed an Incidental Scallop Permit.

c. MCCLAVE often transferred legally harvested scallops to Co-conspirator-1 at a dock where Fishing Vessel-1 had landed, in or around Point Pleasant, New Jersey.

d. Following the sale of the legally harvested scallops to Co-conspirator-1, MCCLAVE would call Co-conspirator-1 to signal to him that MCCLAVE was ready to transfer illegally harvested scallops to Co-conspirator-1.

e. MCCLAVE met Co-conspirator-1 at MCCLAVE's house to transfer illegally harvested scallops to Co-conspirator-1.

f. On a date subsequent to the transfer of illegally harvested scallops to Co-conspirator-1, MCCLAVE met Co-conspirator-1 near the Garden State Parkway, or elsewhere, to receive payment in cash from Co-conspirator-1 for the illegally harvested scallops.

g. Co-conspirator-1 sold the illegally harvested scallops to seafood wholesalers and restaurants in New Jersey.

h. MCCLAVE falsified FVTRs for submission to NOAA to reflect that only the 40-pound limit or less of scallops had been harvested by Fishing Vessel-1 on certain trips, when in fact more than the 40-pound limit had been harvested on those trips.

i. Co-conspirator-1 falsified Dealer Reports for submission to NOAA to reflect that only the 40-pound limit or less of scallops harvested by Fishing Vessel-1 on certain trips had been sold to Seafood Company-1 when in fact more than the 40-pound limit had been sold to Seafood Company-1.

j. MCCLAVE, during at least part of the time period that Fishing Vessel-1 possessed an IFQ Scallop Permit, concealed harvested scallops in a hidden compartment on Fishing Vessel-1.

k. MCCLAVE, during the time period that Fishing Vessel-1 possessed an IFQ Scallop Permit, entered false information on the vessel's FVTR that underreported the amount of scallops the vessel had harvested on an individual trip.

## Overt Acts

5. In furtherance of the conspiracy and to effect the illegal objective, MCCLAVE, Co-conspirator-1, and others, committed, and caused to be committed, the following overt acts, among others, within the District of New Jersey, and elsewhere:

a. On or about August 10, 2020, while Fishing Vessel-1 possessed an Incidental Scallop Permit, MCCLAVE submitted an FVTR to NOAA for Fishing Vessel-1 that reflected that only 40 pounds of scallops had been harvested on an individual trip when in fact more than the 40-pound limit of scallops had been harvested.

b. On or about August 10, 2020, Co-conspirator-1 submitted a Dealer Report to NOAA indicating Fishing Vessel-1 had sold 40 pounds of scallops from an individual trip to Seafood Company-1 when in fact more than the 40-pound limit of scallops had been sold to Seafood Company-1.

  c. On or about April 5, 2021, MCCLAVE and others concealed scallops harvested by Fishing Vessel-1 in a hidden compartment on Fishing Vessel-1.

  d. On or about April 5, 2021, Co-conspirator-1 purchased scallops from Fishing Vessel-1 at a dock in or around Point Pleasant, New Jersey.

  e. On or about April 5, 2021, MCCLAVE prepared a false FVTR that reported fewer scallops than Fishing Vessel-1 had harvested on an individual trip while the vessel possessed an IFQ Scallop Permit.

In violation of Title 18, United States Code, Section 371.


*Philip R. Sellinger*

**PHILIP R. SELLINGER**
United States Attorney

*Christopher L. Hale*

**TODD KIM**
Assistant Attorney General
U.S. Department of Justice
Environment & Natural Resources Division

Case Number: 25-cr-1 (ZNQ)

**United States District Court
District of New Jersey**

UNITED STATES OF AMERICA

v.

DARREN MCCLAVE

**INFORMATION FOR**

18 U.S.C. § 371
18 U.S.C. § 1519

Philip R. Sellinger
United States Attorney
For the District of New Jersey

Kelly M. Lyons
Assistant U.S. Attorney
Newark, New Jersey
973-202-3054